IN THE UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
WISCONSIN

| | |
|---|---|
| The Estate of TONY ROBINSON, JR., ex. rel. Personal Representative ANDREA IRWIN, <br><br> Plaintiff, <br><br> v. <br><br> The CITY OF MADISON, WISCONSIN, and MADISON POLICE OFFICER MATTHEW KENNY, <br><br> Defendants. | No. 3:15-CV-502 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, The ESTATE OF TONY ROBINSON, JR., by personal representative ANDREA IRWIN, and complaining of Defendants The CITY OF MADISON, WISCONSIN and MADISON POLICE OFFICER MATTHEW KENNY, and states as follows:

### Introduction

1. Tony Robinson, Jr.—a loving 19 year-old son, brother, and friend—should be alive today. Tony Robinson, Jr., fondly called "Terrell," should be looking forward to the next chapter of his life following high school. Tragically, and without lawful justification, Tony Robinson, Jr.'s life was taken through an act of intentional homicide—a violation of Terrell's constitutional rights—by Madison Police Department Officer Matthew Kenny.

1

2.      Because of his status as a police officer, Defendant Kenny has not been held accountable for his actions. Instead, despite the cries of a grieving community, the authorities, including the City of Madison, have endorsed Defendant Kenny's actions—an act of deliberate indifference to the senseless and unlawful killing of Tony Robinson, Jr., and others, at the hands of the Madison Police Department.

3.      This action, brought pursuant to 42 U.S.C. § 1983, seeks some measure of redress for the wrongful, unjustified actions of Officer Kenny and the Madison Police Department. Those actions have left a family and community irreparably harmed, and without other recourse.

4.      In short, while nothing can ever bring Tony Robinson, Jr. back—and no form of redress can ever be truly adequate—this action seeks to hold accountable those responsible for the violation of constitutional rights of not only Tony Robinson, Jr. but as well as others harmed by the Defendants' actions.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

6.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in Dane County, and the events giving rise to the claims asserted herein all occurred within this district.

## PARTIES

7.      Plaintiff, the Estate of Tony Robinson, Jr., constitutes the legal interests of Tony Robinson, Jr. and has a Personal Representative, Andrea Irwin, the mother of the mother of Tony Robinson, Jr.

8. The City of Madison is a Wisconsin municipal corporation, which operates the Madison Police Department (the "MPD" or "Department"), which in turn sets city-wide policy for the conduct of police officers employed by the Department.

9. Defendant Officer Matthew Kenny is Madison police officer who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Madison police officer.

## FACTUAL ALLEGATIONS

### The Unjustified Killing of Tony Robinson

10. On March 6, 2015, Tony Robinson spent some time at the home of friends who lived in the second floor apartment at 1125 Williamson St.

11. There, Robinson began acting strangely. For example, he seemed to be speaking to his father, who was not present at the home. Robinson was very emotional and friends described him as "not himself."

12. After an hour, Robinson's friends left the apartment to go to a high-school basketball game. Tony Robinson's odd behavior continued and he ran through traffic on Williamson Street, prompting one friend to call the Madison Police Department.

13. After getting the call, MPD dispatch called for Defendant Kenny ("3 David 8" on the dispatch) and Madison Police Officer John Christian ("3 David 7" on the dispatch) to check on the well being of the individual who had been acting "erratically" on Williamson. A third officer, Sergeant Jamar Gary, was also dispatched to the scene.

14. Dispatch sent Defendant Kenny and Officer Christian to 1125 Williamson Street. Dispatch reported that the officers should be looking for a "male black" with "light skin" in a "tan jacket and jeans," who was "outside yelling" and "jumping in front of cars."

15. Dispatch further reported that the individual was 19 years of age, named Tony Robinson and that he was unarmed.

16. Dispatch reported to Defendant Kenny, and the other officers, that the residents of 1125 Williamson Street who had initially called the Department had "left the scene." Defendant Kenny specifically asked whether the 911 caller was "still in the area" and was informed that the caller was "not going to be remaining on scene."

17. Defendant Kenny claims that dispatch reported that Tony Robinson had taken "some type of mind altering substance."

18. At some point, Defendant Kenny, and the other officers, was informed that Tony Robinson had no shirt on.

19. Defendant Kenny was informed by dispatch that Robinson had been at the gas station across Williamson street, had another interaction with a different individual, at a restaurant, but had returned across the street.

20. Defendant Kenny, and the other officers, were specifically told that Tony Robinson had returned to the apartment that they had been told was left vacant—the upstairs apartment at 1125 Williamson Street.

21. At no point did dispatch ever indicate that the initial 911 caller—who told the police he was leaving—had returned to 1125 Williamson

4

Street.

22. Dispatch reported that Robinson, and only Robinson, had returned to the second floor apartment.

23. Defendant Kenny arrived at 1125 Williamson just seconds before Officer Christian and Sergeant Gary. Defendant Kenny pulled into the driveway of the home without using his sirens or lights.

24. Despite the fact he knew Christian and Gary were almost there, Defendant Kenny decided to go into the upstairs apartment without waiting for backup.

25. Though Defendant Kenny later claimed that he heard a possible disturbance inside the home, Tony Robinson was the only person inside the upstairs apartment at 1125 Williamston Street.

26. Within seconds of entering the stairwell, Officer Kenny used his gun to fire seven shots at Tony Robinson. In so doing, Defendant Kenny fired a first volley of three shots, but then stopped to pick up his flashlight, which he had dropped. Defendant Kenny then took a step back and fired three more shots into Tony Robinson. Then, Defendant Kenny took another step back, raised his gun again, and fired a seventh shot.

27. Defendant Kenny's use of deadly force was unjustified. Defendant Kenny knew that Tony Robinson was 19 years old, that he was unarmed, had been experiencing mental health issues, and had been told several times that the other individuals at 1125 Williamson Street had left the scene.

28. At no point during Tony Robinson's encounter with Defendant Kenny did Robinson take any action that would justify the use of deadly force.

5

29.     At no point during Mr. Robinson's encounter with Defendant Kenny did Robinson pose an imminent threat of death or serious bodily harm sufficient to justify the use of deadly force by Defendant Kenny.

30.     Tony Robinson died from the multiple, unnecessary gunshot wounds he suffered at the hands of Defendant Kenny.

### Defendant Kenny Lies to Investigators, Attempting to Cover-Up His Unlawful Acts

31.     Investigators who looked into the shooting—to determine whether Defendant Kenny should be criminally charged—did not conduct an adequate or proper investigation. Instead, investigators contaminated the entire process to allow Defendant Kenny the opportunity to concoct a sequence of events that would make it seem as if his unjustified use of deadly force was actually justified.

32.     For example, before making a statement, Defendant Kenny—with his attorney—was permitted to return to 1125 Williamson and do a "walkthrough" of the scene and examine the stairwell where he shot Tony Robinson. This "walkthrough" was pursuant to the practices and policies of the Department but was completely unjustified.

33.     Likewise, Defendant Kenny's squad camera recorded the doorway of the home and whatever could be seen of the incident from that angle. And, Sgt. Gary's microphone, from inside of his vest, was able to pick up audio of the shooting. Shockingly, Defendant Kenny was allowed to review the video and audio—again, alone with his attorney—before giving his version of events to investigators.

34. Nonetheless, even when Defendant Kenny finally told his story to investigators, his account conflicted with the audio and video recordings.

35. For instance, Defendant Kenny maintains that the first 3 (of the 7) shots he fired "were fairly close to the top of the stairs." Documentary evidence reveals, however, that all of the shots were fired from at or near the bottom of the stairwell.

36. Likewise, as another lie to attempt to avoid criminal charges and make it seem as if the use of deadly force against Tony Robinson was justified, Defendant Kenny claimed that Tony Robinson continued to "aggress towards" him after the first three shots, and again *after* Defendant Kenny fired the second volley of three shots. Thus, Defendant Kenny maintains that Tony Robinson "aggressed towards" him after he had shot Tony Robinson 6 times. This scenario, implausible on its face, conflicts with the audio and video evidence, and reveals that this account is false.

37. Defendant Kenny's use of deadly force against Tony Robinson was unjustified , unconstitutional, and unlawful.

### Pursuant to Madison's Unconstitutional Polices, The Department "Exonerates" Defendant Kenny

38. Following the Shooting of Tony Robinson, the City purported to conduct its own "internal investigation" of the shooting. The result of this investigation was a finding that Officer Kenny was "exonerated."

39. The City's investigation into the shooting of Tony Robinson is evidence of the City's continued deliberate indifference to the use of unconstitutional deadly

7

force against unarmed citizens. Rather than examine the evidence, and inconsistencies between Defendant Kenny's account and the audio and video footage, the investigators accepted wholesale Defendant Kenny's version of events.

40. Indeed, the City did not even speak to Defendant Kenny in the course of its investigation. Instead, policymakers for the City publically spoke out endorsing Defendant Kenny's actions.

41. The City of Madison, which purported to conduct its own "internal investigation" of the matter absolved Defendant Kenny of any wrongdoing, thereby sanctioning and condoning his misconduct.

42. This was not the first time the City of Madison failed to discipline MPD officers who have used deadly force against unarmed individuals without justificcation. In fact, the MPD has had a history of accepting and encouraging such conduct. Indeed, as reported by local media, Officers in the City of Madison has killed at least 5 unarmed citizens since 2012 but failed to discipline or re-train its officers.

43. These failures to train and discipline, in the face of widespread de-facto policies allowing the use of excessive deadly force, cause, are deliberately indifferent to, and even encourage the use of unconstitutional deadly force by members of the Department.

44. The Department's treatment of Officer Stephen Heimsness is just but one example of these polices, practices, procedures, and failures to train and discipline. In 2006, Officer Heimsness brutally beat James Bauer, a patron of a bar to which he was dispatched. Following an "internal investigation," the Department

8

refused to impose any discipline or train him on the use of force, and the City put even put Officer Heimsness back on the street. Then, in 2012, as a result of the Department's failures to train and discipline, Officer Heimsness shot and killed Paul Heenan, an unarmed man in his own neighborhood, who was being helped home by his neighbor.

45. Mr. Hennan was killed less than a 10-minute walk from the place where Defendant Kenny killed Tony Robinson.

46. Taking place less than 3 years before the shooting of Tony Robinson, Jr., the killing of Mr. Heenan is strikingly similar to the shooting of Tony Robinson—an MPD officer shot and killed an unarmed citizen within seconds of arriving to the scene of an incident where an individual was mentally impaired.

47. Rather than train, discipline, or in any way seek to prevent another shooting of an unarmed individual, the City failed to adequately punish Officer Heimsness, and failed to take steps to ensure the shooting of another unarmed citizen would not occur again. The City was therefore deliberately indifferent to the use of unjustified deadly force by MPD officers against unarmed individuals, including Tony Robinson, Jr. and others.

48. In sum, Madison Police Department's handling of Officers Heimsness and Kenny—by failing to discipline or train them and then commending them following the killing of unarmed individuals—demonstrates how the police department has not only tolerated, through a lack of discipline, but has actually encouraged, officers' uses of excessive force as a matter of Department policy.

## Plaintiffs' Damages

49.     The Defendants' actions imposed substantial harm upon Tony Robinson, Jr. during the period of time after which he was shot 7 times by Defendant Kenny until he ultimately passed away. The amount of excruciating pain Tony Robinson, Jr. felt during those final moments is unquantifiable.

50.     In addition, just a teenager, Tony Robinson, Jr. lost the opportunity to live the rest of his life, to grow up, to marry, and to even have children of his own. These damages are tragic and substantial.

## Count I - 42 U.S.C. § 1983
## Violation of Constitutional Rights

51.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

52.     As described in the preceding paragraphs, the conduct of the Defendant Kenny toward Tony Robinson, Jr. constituted a violation of Robinson's constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution.

53.     The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others.

54.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Madison, such that Defendant City of Madison is also liable, in that:

a. As a matter of both policy and practice, the City of Madison encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the City of Madison facilitates the very type of misconduct at issue here by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Madison police officers to believe their actions will never be meaningfully scrutinized and, in that way, directly encouraging future uses of excessive deadly force such as those Plaintiff complains of;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Madison Police Department abuse citizens in a manner similar to that alleged by Tony Robinson, Jr. in this Count on a regular basis, yet the Madison Police Department investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases;

d. The Madison Police Department's failure to meaningfully investigate police misconduct and to control its officers is further illustrated by its handling of Officer Kenny's shooting. Officer Kenny, was not disciplined for this first death and was back on full duty soon after the incident.

e. In fact, the MPD encouraged Kenny's conduct by previously rewarding him with commendations for aggressive police tactics.

55. As a result of the City of Madison's policies and practices, and the unjustified and unreasonable conduct of the Defendant Kenny, Plaintiff has suffered injuries, including death and severe emotional distress.

## Count II—Municipal Indemnification

56. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

57. Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

58. During all times relevant to this complaint, Defendant Officer Kenny was an employee of the Madison Police Department, who acted within the scope of his employment in committing the acts described herein.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, CITY OF MADISON, WISCONSIN, and MADISON POLICE OFFICER MATTHEW KENNY, awarding compensatory damages and attorneys' fees, as well as punitive damages against MATTHEW KENNY, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

s/David B. Owens
*One of Plaintiffs' Attorneys*

Jon Loevy[*]
David B. Owens
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

---

[*] Application for *pro hac vice* admission forthcoming.