IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THE ESTATE OF TONY ROBINSON, JR., Ex. Rel. Personal Representative ANDREA IRWIN, | No. 15-CV-502 |
| Plaintiff, | Hon. Judge Peterson, Presiding |
| v. | |
| THE CITY OF MADISON, WISCONSIN, MADISON POLICE OFFICER MATTHEW KENNY, | |
| Defendants. | |

**PLAINTIFF'S MOTION TO BAR PORTIONS THE PROPOSED EXPERT TESTIMONY OF JOHN G. PETERS.**

Plaintiff, the Estate of Tony Robinson, Jr., by and through her attorneys, respectfully moves to bar certain opinions of Defendant Kenny's expert witness John G. Peters. In support thereof, Plaintiff states:

### Introduction

Owing to the fact that factual scenarios are often hotly disputed (which is why summary judgment is often improper), the retention of "dueling" police practice experts in this matter is unexceptional. However, this does not give such an expert free-rein to opine about every fact or opinion they disagree with; such testimony must be well-supported, reliable, and relevant. Here, Defendant Kenny's rebuttal expert Dr. John G. Peters, while well qualified in some fields of police practice, has over-reached in several respects. Because he has set out to disagree with Plaintiff's police practices expert, and abandoned reliable methodology in so doing, this

Court's intervention is necessary to rein-in Dr. Peters's proposed opinions. Accordingly, this Court should limit Dr. Peters's testimony to ensure that what the jury hears satisfies Rule 702.

## Discussion

### I. Legal Standards

Federal Rule of Evidence 702 requires expert testimony to be based on sufficient facts or data, and to be the product of reliable scientific or other expert methods that have also been reliably applied. And for expert testimony to be admissible, the proponent of the evidence must establish that the expert's testimony is reliable (and relevant) by a preponderance of the evidence. *United States v. Saunders*, 826 F.3d 363, 368 (7th Cir. 2016) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 592–93 (1993)). Thus, "Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable." *Higgins v. Koch Development Corp.*, 794 F.3d 697, 705 (7th Cir. 2015); *see also Zelinski v. Columbia 300*, Inc., 335 F.3d 633, 640 (7th Cir. 2003). "To gauge reliability, the district judge must determine whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is reliable." *Id.*

In addition, merely being a qualified as expert on one topic does not give such an expert to opinion on areas outside of their expertise and expert opinions "may not be divorced from the expert bases that qualified them as witnesses in the first place." *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (expert opinions "may not be divorced from the expert bases that qualified them as witnesses in the

first place."); *cf. United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) (expert testimony not "based upon the expert's special skills" is "at best . . . gratuitous, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403"). Accordingly, where an expert merely provides an *ipse dixit*—because I said so—opinion, their testimony should be excluded because "an expert's opinion that lacks proper substantiation" is "'worthless.'" *Noel*, 581 F.3d at 497 (quoting *Minasian v. Standard Chartered Bank*, 109 F.3d 1212, 1216 (7th Cir. 1997); *see also Mid–State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989).

Thus, while the Court's approach to expert testimony should be flexible, the "critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data 'only by the ipse dixit of the expert' that is properly excluded under Rule 702."*Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013) (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also, e.g.*, Smoot v. Mazda Motor of America, Inc., 2005 WL 6015077, at *2 (E.D. Wis. Aug. 11, 2005) (barring expert on the basis that the he Court determines that party had not met "their burden under RULE 702 because they have not shown [the expert's] opinion to be based on sufficient facts or data"); *Am. Family Mutual Ins. Co. v. Elextrolux Home Prods., Inc.*, 2015 WL 2893179, at *9-*10 (W.D. Wis. June 26, 2014) (similar).

## II. Dr. Peters Opinion Concerning Multiple Taser Deployments Should Be Barred

Dr. Peters opinion about Officer Kenny's supposed training concerning the "prohibition" on the use of multiple TASER deployments should be barred for myriad reasons. The opinion also reveals why this Court should be skeptical—and closely monitor the scope—of Dr. Peters testimony.

Dr. Peters has opined: "Officers, such as Officer Kenny, are trained not to use multiple Taser electronic control weapon (ECW) applications on a human." Peters Report, Dkt.46-2, at 7. Framed primarily as a criticism of Plaintiff's expert Dennis Waller, Dr. Peters concludes that had Mr. Waller been adequately trained on Taser devices he "would have known about the prohibition of multiple applications." *Id.* Dr. Peters offered this opinion in rebuttal to Mr. Waller's deposition testimony that, rather than shoot and kill Tony Robinson, Defendant Kenny could have used a Taser to subdue him. Mr. Waller testified that he believed there were warnings on multiple uses, basically cautioning officers not to deploy a Taser more than 3 times (or for 15 seconds, with each deployment constituting a 5-second charge). Waller Depo., Dkt. 29, at 26.

The problem with Dr. Peters's opinion is that it is completely untrue. There is no prohibition on the deployment of a Taser or other electronic control device, as Dr. Peters asserts. And even if there was, Officer Kenny was not *trained* that multiple Taser deployments are prohibited. As set forth below, it turns out Mr. Waller's testimony is completely accurate and correct. Accordingly, Dr. Peters's unsupported and untrue opinion to the contrary should be barred. And, the purported opinion reveals something important about Dr. Peters proffered opinions: a willingness to

exaggerate in order to criticize—for the sake of criticism alone—another's expert opinion even though that opinion is completely correct.

To start, there is absolutely no evidence upon which Dr. Peters relied that suggests that Officer Kenny was *trained* that multiple TASER usages are prohibited. Tellingly, and as conceded at his deposition, Dr. Peters admits that he did not cite any training records for Officer Kenny in support of this opinion. Peters Depo., Dkt. XX, at XX (to be filed).[1] Put differently, this opinion is nothing more than the *ipse dixit* of Dr. Peters.

In addition, the training manual Dr. Peters reviewed—the 2007 Defense And Arrest Tactics Training ("DAAT") Guide For Law Enforcement Officers—does not include any prohibition whatsoever on multiple taser deployments. Instead, the guide states the opposite—that an ECD can be appropriately used more than once. The relevant paragraph in the "Electronic Control Devices" section provides:

> Be aware that repeated or prolonged application of an ECD can have an additive effect and could cause injury, especially in someone whose health is already compromised in some way, including by drug use, injury, or over-exertion, as can happen in people displaying medically significant behavior. **Before each application of an ECD, as with any other use of force, reassess the situation.** If use of the ECD is not providing effective control to permit taking the subject into custody, consider whether it would be appropriate to disengage and/or escalate to another intervention option.

Defense and Arrest Tactics: A Training Guide For Law Enforcement Officers (2007), Exhibit 1, at 46. (emphasis added).

---

[1] Dr. Peters was not made available for deposition until October 20, 2016; and although Plaintiff requested an expedited copy of the transcript, it has not yet been received. For that reason, Plaintiff is not able to provide citations to Dr. Peters's deposition, but intends to file a supplemental exhibit containing the relevant excerpts as soon as the transcript is received.

By its plain text, the training manual provides that there is no prohibition on multiple uses, only that an officer must "reassess the situation" before each application.

Likewise, the Madison Use of Non-Deadly Force policy in effect at the time of the shooting does not include any prohibition on multiple usages. Instead, the policy contains no restriction on the number of times the ECD may be used, and in fact presupposes that officers may use an ECD multiple times. The policy's only restriction is that when an ECD is used three times, officers are required to request medical attention (implying, obviously, that three deployments is consistent with policy). *See* Madison Police Department, *Madison Policy Manual*, 6-200 (Use of Non-Deadly Force) (2014), Exhibit 2, at 3-4.[2] Tellingly, Dr. Peters does not cite any training or document that Defendant Kenny received as the basis for the opinion; he instead exaggerates his opinion based upon general product warnings on the Taser devices. Unfortunately for Dr. Peters, like the DAAT training guides and MPD policies, nowhere do these TASER documents—which refer to the devices as Conducted Electrical Weapons or CEWs—contain a prohibition on more than one use. Instead, they imply that multiple uses can be appropriate and no where forbid multiple uses. *See* TASER Handheld CEW Warnings, Instructions, and Information: Law Enforcement, attached as Exhibit 3, at 2.

---

[2] Subsequent to Dr. Peters deposition, the City of Madison produced an additional MPD training document illustrating that multiple Taser usages are still permitted and designated a 30(b)(6) witness who testified consistent with MPD policy—and the testimony of Waller—that multiple TASER deployments are not prohibited but can be appropriate depending on the circumstances.

Finally, it is worth noting that Mr. Waller's testimony—that officers can use an ECD up to three times, with caution—is right in-sync with all of the foregoing as well as other publically available training materials. Mr. Waller testified: "the limitations are to try to limit [multiple taser usages]," and "the recommendation is to try to avoid going over three." Waller Dep., Dkt. 29, at 26; *see also id.* ""noting that they recommend probably no more than two or three, if possible"). Because each deployment is 5 seconds, 15 second limitations equates to three deployments.

The DAAT manual does not prohibit multiple usages, and the Madison policy specifically references three deployments, as does the TASER training guide that Defendant City of Madison produced in this litigation in relation to its training for officers on ECDs. *See* Exhibit 4, at 26 ("Several law enforcement groups … have established 15 seconds of CEW exposure (multiple applications or continuous) as a significant safety point."). Similarly, when the Department of Justice commissioned a committee concerning non-deadly force, that committee emphasized that multiple deployments must be assessed carefully but, as Waller indicated, should not exceed three deployments. UNITED STATES DEPARTMENT OF JUSTICE, NATIONAL INSTITUTE OF JUSTICE, POLICE USE OF FORCE, TASERS AND OTHER LESS-LETHAL WEAPONS 16 (2011) (explaining that police departments should "policies should require officers to assess continued resistance after each standard cycle and should limit use to no more than three standard cycles."), attached as Exhibit 5.

In the end, Dr. Peters's opinion about Tasers lacks any factual basis and is, instead, contrary to the other available evidence and should therefore be barred under *Daubert* and Rule 702.

### III. Dr. Peters Should Be Barred From Testifying That Defendant Kenny was a Certified Officer

In opinion 1, Dr. Peters proposes to testify that Defendant Kenny was "certified as a Wisconsin police officer." Peters Report, Dkt. 46-2, at 4. As above, none of the evidence offered in support of this opinion pertains to Defendant Kenny's *certification*, meaning that there is no expert basis for the opinion.

In addition, there is no question that Defendant Kenny was a certified police officer and jurors can infer this from their common sense. The opinion is simply irrelevant and therefore inadmissible.

Finally, and separately, because the opinion is based upon common sense and really constitutes improper "bolstering" of Defendant Kenny by essentially vouching for him. This is doubly problematic. For one, Courts routinely forbid such evidence because of its prejudicial nature. *See, e.g.*, *Sughayyer v. City of Chicago*, 2011 WL 2200366, at *3-4 (N.D. Ill. June 6, 2011) (granting Plaintiff's motion to bar "attempts to bolster credibility"); *Charles v. Cotter*, 867 F. Supp. 648, 659 n.6 (N.D. Ill. 1994), *White v. Gerardot*, 2008 WL 4724000, at *2 (N.D. Ind. Oct. 24, 2008); *Graham v. Bennett*, 2007 WL 781763, at *3 (C.D. Ill. Mar. 12, 2007)); *see also, e.g.*, *Case v. Town of Cicero*, 2013 WL 5645780, at *2 (N.D. Ill. Oct. 13, 2013) ("Plaintiffs seek to bar evidence that Defendant officers … have received commendations or awards. The motion is GRANTED."). Second, by offering this sort of superfluous

testimony, Dr. Peters has, essentially, sought to render opinions about Defendant Kenny's credibility—a form of expert testimony that is absolutely forbidden. *Cf. United States v. Farrell*, 563 F.3d 364, 377 (8th Cir. 2009) ("[A]n expert witness may not usurp the jury's function to weigh evidence and make credibility determinations.").

### IV. Dr. Peters's Should be Barred from Testifying about The Effect of Stress on Memory

Dr. Peters—in complete "rebuttal" mode and well beyond his qualifications—has offered an opinion about the effect of stress on memory during incidents like the one here. In essence, Dr. Peters is offering support for Defendant Kenny by opining that if there are inconsistencies or flaws in his version of events—of which there are many—those can be the product of a failed memory rather than a lie told by Defendant Kenny to avoid liability in this suit.

Dr. Peters is qualified to testify about *a lot* of things: he's surely familiar with many sorts of police practices, he has received all sorts of training on police weaponry and force options. However, the field of memory and perception is beyond the scope of his expertise. Dr. Peters is not a psychologist, psychiatrist, or even a medical doctor. Instead, Dr. Peters read one experimental study from 2015, summarized it in his report, and has offered to opine about that study as his own "expertise." This is the exact sort of opinion that should be barred because it is "divorced from the expert bases that qualified" Dr. Peters "as [a] witness[] in the first place." *Noel*, 581 F.3d at 497. *cf. United States v. Hall*, 93 F.3d 1337, 1343 (7th

Cir. 1996) (expert testimony not is "at best . . . gratuitous, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403").[3]

Accordingly, because this testimony is not "based upon the expert's special skills, as courts have warned, it is at best gratuitous, amounts to Dr. Peters *ipse dixit*, and lacks a sufficient foundation in facts and data. Dr. Peters should be barred from offering testimony on the effect of stress on memory.

## V. Dr. Peters Should Be Prohibited from Expressing Legal Conclusions

In opinions 3 and 7, Dr. Peters offers extensive opinions about Dr. Kenny's use of force, from the moment he chose to enter the stairwell until he completed shooting Tony Robinson seven times over three bursts. Dr. Peters acknowledges that the only basis for these opinions is Officer Kenny's version of events alone. Peters Depo., Dkt. XX, at XX (to be filed). However, they are really legal conclusions—that Defendant Kenny's use of force did not violate the Fourth Amendment. It is well established that "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Indeed, as the Seventh Circuit has explained:

> The potential for jury confusion may be substantial when the evidence refers to legal issues at the heart of other litigation; such evidence can create a distracting trial within a trial. In such cases, the trial court may exclude the evidence if the purpose for which it is offered can be accomplished through other means.

---

[3] There is much more to say on this point, in light of Mr. Peters deposition testimony, which is not yet available to the parties. Accordingly, and to seek to comply with the deadlines of this Court, Plaintiff will either supplement this motion with that information or address it in Reply to Defendant Kenny's response in opposition to this Motion, should one be filed.

*United States v. Sinclair*, 74 F.3d 753, 758 (7th Cir. 1996). Accordingly, the Seventh Circuit has "determined that Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury." *Id.* at 757 n.1

Here, with its extensive citation to *Graham* and the factors outlined by the Supreme Court for analyzing the Fourth Amendment's "objective reasonableness" standard, there can be no doubt that Dr. Peters opinions—and Opinion 7 in particular—have far exceeded the bounds of expert testimony and crossed into the line of giving opinions about legal conclusions, which he simply may not do. The Court will give instructions on *Graham*, the severity of the crime at issue, whether the suspect poses an immediate threat, whether the suspect is resisting, and the other Fourth Amendment factors. This is the question for the jury to decide, not Mr. Peters. Accordingly, these opinions should be excluded.

## VI. Dr. Peters Must Make Clear That He Is Assuming A Version of Events

It is well established that experts can assume one party's version of the facts and then testify, in their area of expertise, about what follows from that assumption. *See, e.g.*, *United States v. Vest*, 116 F.3d 1179, 1184 (7th Cir. 1997); *EEOC & Bailey v. DHL Express*, 2016 WL 57695890, at *9 (N.D. Ill. Sept. 20, 2016) ("But all experts make certain assumptions (factual and theoretical) in rendering opinions, and factual assumptions by their very nature credit one version of the facts over another.").

Throughout his Report, Dr. Peters asserts—as truth—Dr. Kenny's version of events. This is particularly true for the Opinions that rely solely upon Dr. Kenny's testimony—Opinion 3 (about entering the stairwell); Opinion 5 (about Tony Robinson's behavior); Opinion 6 (About an "imminent threat"); and Opinion 7 (Dr. Peters's legal analysis of the event). Dr. Peters does not criticize or attempt to reconcile inconsistencies in Defendant Kenny's account whatsoever. That is permitted, of course. However, Dr. Peters should not be permitted to testify as if Dr. Kenny's testimony is true or more reliable than other evidence, or suggest that this is the account to be believed. Among other things, Dr. Peters should be prohibited from testifying that Tony Robinson and Officer Kenny were in "close combat," as such framing completely assumes Defendant Kenny's version of events. In the end, this sort of testimony goes well beyond the field of expert testimony and should therefore be barred.

## CONCLUSION

For the reasons above, and those to be further explained when Dr. Peters deposition transcript becomes available, Plaintiff respectfully requests and order of this Court excluding Dr. Peters testimony that falls outside of the ambit of Rules 702 and 703 as well as *Daubert*.

By:    /s/David B. Owens

        Jon Loevy
        Anand Swaminathan
        David B. Owens
        LOEVY & LOIEVY
        311 N. Aberdeen Street,
        Chicago, IL 60607

Phone: (312) 243-5900

Dated: October 31, 2016.

## CERTIFICATE OF SERVICE

  I, David B. Owens, an attorney, certify that on October 31, 2016, I filed the attached Plaintiff's Motion *in limine* to Exclude Expert Testimony of John G. Peters via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/David B. Owens